UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WECARE HOLDINGS, LLC and C. WESLEY
GREGORY, III,

                              PlaintiffS,              08-CV-6213

              v.                                       **DECISION**
                                                       **and ORDER**
BEDMINSTER INTERNATIONAL LIMITED,

                              Defendant.
_____

## INTRODUCTION

Plaintiffs WeCare Holdings, LLC ("WeCare Holdings") and C. Wesley Gregory, III ("Gregory") (collectively "plaintiffs") bring this action against defendant Bedminster International Limited ("Bedminster" and/or "defendant") for breach of contract. Plaintiffs allege that in May 2006, the parties reached an agreement regarding the terms by which defendant would acquire a limited liability company known as WeCare Environmental, LLC (the "Company" and/or the "Target") as referred to in the Purchase and Sale Agreement. Plaintiffs claim that Bedminster subsequently breached the Purchase and Sale Agreement by refusing to satisfy its terms of acquiring the remaining 50% interest in the Company.

Plaintiffs now bring a motion for summary judgment under Federal Rules of Civil Procedure 56[1] and defendant cross-moves for a stay of this action pending the outcome of an arbitration it brought against

---

[1]Plaintiffs also move for the following relief: dismissal of defendant's First and Second Counterclaims on grounds that they are not pled with the required particularity under Rule 9(b) and are directly contradicted by the documentary evidence in the form of the parties agreements; dismissal of the Third, Fourth and Fifth Counterclaims on basis that they are subject to binding arbitration; dismissal of the Sixth Counterclaim on basis that it fails to state a cognizable claim; and dismissal of Bedminster's affirmative defenses on basis that they are without merit.

plaintiffs for violations of an Amended and Restated Operating Agreement (the "Operating Agreement") reached by the parties in May 2006.[2] For the reasons outlined below, the Court denies Bedminster's motion for a stay and grants plaintiffs' motion for summary judgment.

**BACKGROUND**

The following facts, viewed in a light most favorable to the non-movant, are undisputed unless otherwise noted. Plaintiffs and Bedminster entered into a written agreement (the "Purchase and Sale Agreement") on May 10, 2006 pursuant to which Bedminster would acquire all of WeCare Holdings interest in the Company. Prior to May 10, 2006, WeCare Holdings owned 100% of the outstanding interest in the Company. At all times relevant, the Company maintained a composting facility located at 856 Boston Post Road East, Marlborough, MA (the "Project"). In addition, at all times relevant, the Project was a regulated waste disposal facility operated under permit issued by the Massachusetts Department of Environmental Protection.

Pursuant to the Purchase and Sale Agreement, on May 10, 2006 Bedminster acquired from WeCare Holdings 50% of the outstanding interest in the Company. Moreover, Article 6 of the Purchase and Sale Agreement provides for Bedminster's acquisition of the balance of the 50% interest in the Company (the "Remaining Interest"). Under Article

---

[2]Defendant also seeks to stay further proceedings pending the completion of the forensic audit previously agreed to, together with an order compelling such audit and defendant seeks leave to amend its answer to assert an affirmative defense and a more specific counterclaim for indemnification under the Purchase and Sale Agreement.

6.1, Bedminster had the option of acquiring from WeCare Holdings the Remaining Interest for a price calculated in accordance with a formula set forth in the agreement. The purchase option was effective "any time from ... [May 10, 2006] until the date that is thirty months from the date hereof (the "Expiry Date"). Bedminster agreed, however, that "[i]f the Buyer has not exercised the Purchase Option prior to the Expiry Date Buyer shall purchase the Remaining Interest from Seller on the Epiry Date. The consideration for such purchase pursuant to this Section 6.2 shall be U.S. $3,000,000 in cash." Under the Purchase and Sale Agreement, "Remaining Interest" means the remaining fifty percent (50%) of the membership interests in the company, which the Seller will continue to hold following the closing.[3] Accordingly, plaintiffs claim that pursuant to the terms of the Purchase and Sale Agreement, including §6.2, Bedminster agreed and undertook the unqualified obligation to acquire from WeCare Holdings its Remaining Interest in the Company. However, defendant argues that before acquiring the Remaining Interest, plaintiffs had to adhere to certain conditions before the closing date. Defendant also claims that the Purchase and Sale Agreement must be read in conjunction with the Operating Agreement. Thus, Bedminster contends that it had no "unqualified obligation" because plaintiffs were

---

[3]"Remaining Interest Closing Date" is defined as that date on which buyer acquires the Remaining Interest from Seller pursuant to Article 6.

obligated to comply with the provisions of the Purchase and Sale Agreement and the Operating Agreement and failed to do so.

Plaintiffs claim that during a meeting held on November 24, 2007 between Bedminster and WeCare Holdings executives, Bedminster announced that it would not acquire the Remaining Interest under the terms set forth in the Purchase and Sale Agreement but would negotiate for terms substantially reduced from the $3,000,000 purchase price agreed upon. According to plaintiffs, Bedminster proposed new terms on December 4, 2007 that were less favorable to plaintiffs than what was agreed upon in the Purchase and Sale Agreement. In addition, plaintiffs claim that the December 4 offer was presented in the form of an ultimatum that, if not accepted, would result in Bedminster's withdrawal from further negotiations.

Defendant contends that during this time the parties were engaged in settlement negotiations concerning Bedminster's acquisition of the Remaining Interest at a reduced cost. The negotiations continued beyond November, 2007. Defendant further asserts that by offering a reduced amount for the Remaining Interest, plaintiffs confirmed the decline in value and their own culpable conduct. Plaintiffs contend that on April 22, 2008, Bedminster announced that it was "walking away from the deal" and would have "nothing more to do with it." See Affidavit of C. Wesley Gregory ("Gregory Aff.") ¶16. Accordingly, plaintiffs contend that Bedminster repudiated the contract as of April 22, 2008. Defendant disputes this

-4-

assertion and claims that the parties were in the process of settlement negotiations.[4]

Before May 10, 2006, Gregory provided a personal guaranty of certain amounts owed by the Company to Citizen's Bank, N.A., which totaled in excess of $1.3 million (the "Bank Debt"). In addition, Bedminster agreed "if Gregory is required to make any payment with respect to that portion of the Bank Debt attributable to the Company as a guarantor thereof prior to the Remaining Interest Closing Date, Buyer shall indemnify and hold Gregory harmless for fifty percent (50%) of the amounts paid or otherwise incurred by Gregory with respect to such guaranty. If Gregory is required to make any payment with respect to that portion of the Bank Debt attributable to the Company as a guarantor thereof after the Remaining Interest Closing Date, Buyer shall indemnify and hold Gregory harmless for the full amount paid or otherwise incurred by Gregory with respect to such guaranty." See Gregory Aff. Ex. A. Defendant does not dispute this provision but claims that reference to other governing provisions of the Purchase and Sale Agreement as well as the Operating Agreement is necessary.

Before entering into the Purchase and Sale Agreement, defendant:

---

[4]In addition to its obligation to purchase all of the interest in the Company, plaintiffs claim that Bedminster agreed "if there is any claim made against the Marlborough Performance Bond or Marlborough Closure LC following the Closing Date...and prior to the Remaining Interest Closing Date, then Buyer shall indemnify Seller and its affiliates for fifty percent (50%) of the claims made. If there is any such claim following the Remaining Interest Closing Date, Buyer shall indemnify Seller and its affiliates for the full amount thereof." See Gregory Aff. Ex. A. While defendant does not dispute this, defendant claims that the financial and operational condition of the Company was misrepresented to it by plaintiffs.

> completed all audits, assessments, reviews, investigations, tests and studies of the environmental and physical condition of the Project ("the Investigations") which Buyer deem[ed] necessary and appropriate and [was] satisfied in all respects with the findings of such audits, assessments, reviews, investigations, tests and studies.

See Gregory Aff. Ex. A. Moreover, prior to entering into the Purchase and Sale Agreement Bedminster had:

> an adequate opportunity to ask questions and receive answers from the Managers of the [Company] concerning any and all matters relating to the transactions described herein including, without limitation, the background and experience of the current and proposed Managers of the [Company], the plans for operations of the business of the [Company], the business, operations and financial condition of the [Company], and any plans for additional development projects and the like. Such Member acknowledges that he or his purchaser representative has had an adequate opportunity to ask questions and receive answers from the Managers of the [Company] pertaining to the [Company] and the Projects. *Such Member further acknowledges that he is relying on his own independent investigation and analysis to determine whether or not to purchase the Membership Interests.*

See Gregory Aff. Ex. B. Defendant does not dispute these provisions but argues that reference to other governing provisions of the Purchase and Sale Agreement and the Operating Agreement is necessary. In addition, as part of Bedminster's investigation, it had to rely upon budgets and forecasts of plaintiffs which defendant claims proved to be grossly inaccurate.

It is undisputed that the Purchase and Sale Agreement provided that "no party will attempt to deny or defeat such personal jurisdiction and hereby unconditionally waives and agrees not to plead or claim any such action or proceeding brought in any such

court has been brought in an inconvenient forum. All parties hereto agree that they will not bring an action relating to this Agreement or any transaction contemplated by this Agreement in any court other than the state and federal courts situated in Monroe County, New York." See Gregory Aff. Ex A. However, defendant agreed that any dispute arising out of the Operating Agreement would be subject to arbitration and that "no action at law or in equity based upon any claim arising out of or related to the [Operating] Agreement shall be instituted in any court by any Member except (a) an action to compel arbitration pursuant to this Section or (b) an action to enforce an award obtained in an arbitration proceeding in accordance with the Section." See Gregory Aff. Ex. B. In this regard, plaintiffs assert that the Complaint alleges causes of action arising only out of Bedminster's breach of the Purchase and Sale Agreement and no cause of action in the Complaint arises out of the Operating Agreement. Defendant does not dispute these assertions but claims that its defenses arise in part out of plaintiffs' breach of the Operating Agreement which was executed at the same time.

Defendant's Third Counterclaim seeks an accounting concerning the alleged failure to provide monthly financial records. The Fourth Counterclaim asserts that plaintiffs have managed the day-to-day operations of the Company so as to have placed the Company in financial jeopardy. In addition, the Fifth Counterclaim alleges mismanagement relating to the day-to-day operations. Plaintiffs

-7-

contend that the Third, Fourth and Fifth Counterclaims assert matters arising solely under the Operations Agreement. Further, plaintiffs claim that defendants Third, Fourth and Fifth Counterclaims may only be arbitrated and may not be litigated before this Court. Defendant argues that plaintiffs breached both the Purchase and Sale Agreement and the Operating Agreement, which were executed at the same time and thus are part of the same transaction.

## DISCUSSION

### I.   Motion to Stay Action Pending Arbitration

Defendant seeks a stay of this action pending the completion of the arbitration arising out of disputes under the Operating Agreement. In the action pending before this Court, the agreement to arbitrate is contained in the Operating Agreement but not in the Purchase and Sale Agreement. A court, "despite the inapplicability of the FAA, may stay a case pursuant to 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and offset for itself, for counsel, and for litigants.'" See Worldcrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir.1997) (quoting Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 441 (2d Cir.1964)); see also Landis v. North Am. Co., 299 U.S. 248, 254 (1936). "It is appropriate, as an exercise of the district court's inherent powers, to grant a stay where the pending arbitration is an arbitration in which issues involved in the case may be determined." See Sierra Rutile Ltd. v.

-8-

Katz, 937 F.2d 743, 750 (2d Cir.1991); see also Orange Chicken, L.L.C. v. Nambe Mills, Inc., 2000 WL 1858556, at *9 (S.D.N.Y.2000) (finding a stay appropriate where "the claims in the instant action and those being adjudicated in arbitration arise out of the same series of alleged acts"); Midland Walwyn Capital Inc. v. Spear, Leeds & Kellogg, 1992 WL 249914, at *2 (S.D.N.Y.1992) ("Courts in this district have repeatedly granted stays pending arbitration where the nonarbitrable issues overlap the arbitrable issues, thus minimizing inconsistent results and conserving judicial resources."); Hikers Indus., Inc. v. William Stuart Indus. Ltd., 640 F.Supp. 175, 178 (S.D.N.Y.1986) ("A stay as to claims against a non-arbitrating party defendant is properly granted where the arbitration of the plaintiff's claims against a defendant party to the arbitration would at least partially determine the issues which form the basis of the claim against that non-arbitrating defendant.") The party seeking the stay "bears the burden of demonstrating that such a stay is justified." See Worldcrisa, 129 F.3d at 76.

"[A] stay may...be appropriate where the pending proceeding is an arbitration in which issues involved in the [instant] case may be determined." Id. The decision to grant such a stay is entirely within the discretion of the Court. See Orange Chicken, 2000 WL 1858556 at 8. "The movant for a stay must ... establish that there are issues common to the arbitration and the courts, and that those issues will finally be determined by the arbitration." Id. at 9 (internal

quotation marks omitted). Here, defendant has not satisfied its burden of demonstrating that a stay is justified. The Court finds that there are issues not common to both the arbitration and the instant suit that would justify granting a stay. According to defendant's Notice of Intention to Arbitrate against plaintiffs, Bedminster breached various agreements including the Operations Agreement. <u>See</u> Affidavit of John P. Grondin ("Grondin Aff.") Ex. G. Though the Purchase and Sale agreement at issue in the instant case was executed at the same time as the Operating Agreement, it is an independent and distinct agreement. Both agreements are not contingent on one another. The resolution of Bedminster's claim against plaintiffs in the arbitration relating to the Operating Agreement will have no impact on whether defendant breached the Purchase and Sale Agreement. In these circumstances, where the result of the arbitration will not substantially resolve any issue in this action, a stay of this action is not warranted.

Defendant, in citing <u>BWA Corp. v. Alltrans Express U.S.A., Inc.</u>, 112 A.D.2d 850, 852 (1st Dept.1985) argues that the terms of the Operating Agreement were expressly incorporated by the Purchase and Sale Agreement and compliance with the Operating Agreement was a condition of defendant's purchase of the Company. <u>See</u> Def. Br. at 7. In <u>BWA Corp.</u>, the court found that "[i]n the absence of anything to indicate a *contrary intention,* instruments executed at the same time, by the same parties, for the same purpose, and in the course of the

same transaction will be read and interpreted together." See BWA Corp., 112 A.D.2d at 852 (emphasis added). In BWA Corp., a letter of agreement between a sublessee and an overlandlord regarding extra electricity costs was executed the same day as the sublease between the sublessee and sublessor. See id. at 851. The letter agreement expressly referred to the sublease, and contained a clause which stated: "in order to induce you [the overlandlord] to consent to the making of the above proposed sublease, the undersigned [the sublessee] agrees [to the electricity charges]." See id. at 852. The court found that the sublease and the letter were part of the same transaction to sublease the premises in question, and should be treated as a single document. See id.

Here, both agreements provide for separate and distinct forums for relief in the event of breach, contain separate merger clauses and in no way specify that they are conditioned on one another. Moreover, the separate agreements in the BWA Corp. case were expressly conditioned on one another. In that case, both documents related to a single transaction, and the lease of the same particular space; the letter of agreement functioned as an addendum to the terms of the sublease. See id. The Purchase and Sale Agreement governs all performance obligations associated with defendant's purchase while the Operating Agreement provides for all performance obligations relating to its operations. Accepting defendant's request to combine these agreements would dishonor contractual provisions calling for

separate treatment. See <u>JLM Indus., Inc. v. Stolt-Nielsen SA</u>, 387
F.3d 163, 171 (2d Cir. 2004) (Plaintiff "cannot be required to submit
to arbitration any dispute which [it] has not agreed to submit").
Thus, defendant's motion to stay plaintiff's action including, the
motion for summary judgment pending completion of the arbitration for
plaintiffs' violations of the Operating Agreement, is denied.

## II.  <u>Summary Judgment Is Appropriate</u>

The threshold question that must be resolved prior to ruling on
plaintiffs' motion is whether summary judgment would be appropriate
in light of defendant's desire for further discovery. Pursuant to
Fed.R.Civ.P. 56(f), "[s]hould it appear from the affidavits of a
party opposing the motion that the party cannot for reasons stated
present by affidavit facts essential to justify the party's
opposition, the court may refuse the application for judgment or may
order a continuance to permit affidavits to be obtained or
depositions to be taken or discovery to be had or may make such other
order as is just." Under Rule 56(f), the party opposing the motion
for summary judgment must explain, by affidavit, "(1) what facts are
sought and how they are to be obtained, (2) how those facts are
reasonably expected to create a genuine issue of material fact, (3)
what effort affiant has made to obtain them, and (4) why the affiant
was unsuccessful in those efforts." See <u>Meloff v. New York Life Ins.
Co.</u>, 51 F.3d 372, 375 (2d Cir.1995) (citing <u>Hudson River Sloop
Clearwater v. Dept. of Navy</u>, 891 F.2d 414, 422 (2d Cir.1989)).

"[D]enial of access to relevant information weighs in favor of the party opposing a motion for summary judgment." See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 925 (2d Cir.1985). "The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment." See Trebor Sportswear Co., Inc. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir.1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)). "The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." See Trebor, at 511 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 5 (1986)). Nonetheless, "the trial court may properly deny... discovery if the nonmoving party has had a fully adequate opportunity for discovery." See Trebor, at 511.

Bedminster claims that summary judgment is premature and as such plaintiffs motion should not be granted. In addition, defendant argues that plaintiffs' summary judgment motion is an "attempt to bypass discovery and avoid the expected findings of the pending arbitration that plaintiffs breached their duty under the Operating Agreement by incurring inordinate amounts of debt through reckless self-dealing." See Def. Br. at 17.[5] However, as noted above, the

---

[5] Defendant states that there are issues of fact that preclude summary judgment including whether plaintiffs breached their duty to manage the company in a commercially reasonable business manner, which was a condition precedent to defendant's purchase of the remaining 50% of the Company; issues regarding plaintiffs' refusal to allow previously agreed to forensic audit to determine the full extent of the Company's losses and issues concerning how an interest in the Company sold to defendant with financial budget statement showing significant profits became

relevant facts have been established by the sworn statements of WeCare Holdings' sole member, Gregory and Bedminster's Vice-President, Grondin. The Operating and Purchase and Sale Agreements demonstrate that defendant represented and warranted that the decisions it made followed its own extensive due diligence before closing.

Further, Gregory's affidavit shows that defendant participated closely in operating the entity since the closing day. Bedminster has offered nothing in the way of facts to lead one to question plaintiffs' affidavits. Moreover, defendant's anticipatory repudiation of the Purchase and Sale Agreement is the only relevant and thus narrow issue to be determined for purposes of the summary judgment motion. Indeed, defendant does not deny the material facts outlined by plaintiffs in their statement of material facts. Instead of addressing the repudiation argument directly, defendant raises the waiver argument, thus implicitly acknowledging the futility of opposing plaintiffs' repudiation claim. Summary judgment is not to be denied when a party fails to come forward with even a shred of evidence that indicates that further inquiry is appropriate. See Trebor, 865 F.2d at 512. While the nonmoving party is entitled to have an opportunity to "discover information that is essential to his opposition," id. at 511, a court is not required to allow further

---

substantial losses while the Company was run by plaintiffs. See Def. Br. at 18.

-14-

discovery where there is no indication that such discovery would yield anything fruitful. <u>See</u> <u>id.</u> at 512.[6]

## III. <u>Anticipatory-Repudiation Claim</u>

To establish anticipatory repudiation under New York law, a plaintiff must identify an "'overt communication of intention' not to perform." <u>See</u> <u>O'Shanter Resources, Inc. v. Niagara Mohawk Power Corp.</u>, 915 F.Supp. 560, 567 (W.D.N.Y.1996) (quoting <u>Tenavision, Inc. v. Neuman</u>, 45 N.Y.2d 145 (1978)). Further, anticipatory repudiation occurs when a party, before the time for performance under a contract, clearly and unequivocally manifests an intention not to fulfill a contractual duty. <u>See</u> <u>Lucente v. IBM Corp.</u>, 310 F.3d 243, 258 (2d Cir.2002) (citing <u>Norcon Power Partners v. Niagara Mohawk Power Corp.</u>, 92 N.Y.2d 458 (1998)); <u>see</u> <u>also</u> <u>Rachmani Corp. v. 9 East 96th St. Apt. Corp.</u>, 211 A.D.2d 262, 267 (1st Dept. 1995) (anticipatory repudiation occurs where there is objective action, "a definite and final communication of the intention to forego performance").[7] Essentially, what is required to demonstrate defendant's anticipatory breach is a clear and unequivocal

---

[6]This is not a case where defendant has not had the opportunity of perusing a wide variety of relevant documents. Both plaintiffs and defendant append thick appendices to affidavits that include but is not limited to, the Purchase and Sale Agreement in its entirety, Operating Agreement in its entirety, numerous other agreements between the parties, financial statements and numerous documents concerning the financial aspects of the Company, numerous e-mail correspondences exchanged between the parties, and both parties' K-1 statements from the 2006 and 2007 tax returns.

[7]Anticipatory repudiation, as a theory of recovery requires a plaintiff to choose between one of two options when faced with the impending breach: the plaintiff may either "elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties, or ... he may continue to treat the contract as valid and await the designated time for performance before bringing suit." <u>See</u> <u>Lucente</u>, 310 F.3d at 258 (citations omitted).

manifestation of the intention not to perform further obligations under the Purchase and Sale Agreement.[8]

Here, plaintiffs have identified an e-mail communication by Grondin dated December 4, 2007 which refers to a meeting in New York City and discussions relating to defendant's obligation to purchase plaintiffs' Remaining Interest in the Company. In that same e-mail, Grondin affirmatively states that unless plaintiffs accept the revised terms by Bedminster, then defendant will "withdraw from further negotiations." See Gregory Aff. Ex. D.[9]  Plaintiffs buttress this conclusion by referring to Gregory's affidavit and to contemporaneously written e-mail communications that establish an unequivocal decision by defendant to "walk... away from [the] transaction and ... hav[e] nothing more to do with it." See Gregory Aff., ¶16, Ex. E. Further, as Gregory's affidavit demonstrates, these statements made in April 2008 reinforce Bedminster's earlier position in November 2007 that it would not proceed pursuant to the Purchase and Sale Agreement absent several concessions from plaintiffs.

---

[8]Where a contract obligates a party to purchase identified property and the purchaser's behavior shows repudiation of that contract, the seller is relieved of any duty to tender performance or wait for the time of performance before suing. See Madison Invs. v. Cohoes Assoc., 176 A.D.2d 1021, 1022 (3d Dept.1991) ("plaintiff seeking to maintain action for specific performance or damages for non-performance of a contract must demonstrate that a tender of ... own performance was made, unless tender was waived or the necessity for such a tender was obviated by acts of the other party amounting to an anticipatory breach..."), mot for lv den., 79 N.Y.2d 1040 (1992).

[9]Defendant described those terms as "final and not for negotiation." See id. Grondin was replying to a memo dated November 30, 2007 from Gregory in which Gregory recited his understanding that defendant notified him in a November 24 meeting that it "will not buy out the second half of the deal per the existing purchase agreement executed last May." Grondin did not challenge this assertion in his reply.

Viewing all these submissions together, and even in the light most favorable to defendant, this Court finds that a reasonable fact finder could identify a definite and final communication of Bedminster's intention to forego performance. Defendant's announcement on April 22, 2008 that it was "walking away from the deal," establishes clear evidence of an intention not to perform and is an anticipatory breach under New York law.

Defendant argues however that plaintiffs "willfully renegotiat[ed] the terms of Defendant's purchase of the remaining 50% of the Company" and accordingly waived any claim of repudiation. See Def. Br. at 4. Initially, for waiver to apply there must be a "voluntary and intentional abandonment of a known right[.]" See Gen. Motors Acceptance Corp. v. Clifton-Fine Cent. Sch. Dist., 85 N.Y.2d 232, 236 (1995); see also Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp., 301 A.D.2d 70 (1st Dept.2002) (Alleged repudiation of a contract can be waived when the non-repudiating party has knowledge of the alleged repudiation). In this case, any alleged renegotiations between the parties were not successful and accordingly the original terms of the Purchase and Sale Agreement remain unchanged. In addition, plaintiffs did not accept substitute performance or agreed to any altered consideration, but, rather, brought the instant action once it became clear, in light of the renegotiations that Bedminster intended to repudiate its obligations.

-17-

Moreover, even assuming that the renegotiations are considered settlement discussions for purposes of defendant's waiver argument, evidence of settlement discussions would not support defendant's waiver claim. See Enter. Eng'g., Inc. v. Hartford Fire Ins. Co., 2004 WL 2997857, *4 (S.D.N.Y.2004) (noting that pendency of settlement discussions are not sufficient to support waiver of contractual deadline); see also Ballard v. Parkstone Energy, LLC, 522 F.Supp.2d 695, 710 (S.D.N.Y.2007). As defendant has not and is not able to introduce evidence to deny a critical element of plaintiffs' cause of action, plaintiffs' motion for summary judgment relating to defendant's anticipatory breach is granted.

## IV.   **Bedminster's Eight Affirmative Defenses and Four Counterclaims**

Bedminster's Answer contains eight affirmative defenses including: (1) plaintiffs' complaint is premature; (2) plaintiffs' claims are barred by the equitable doctrine of laches; (3) plaintiffs' complaint should be dismissed based on waiver, consent and estoppel; (4) claims should be dismissed based on plaintiffs' "unclean hands;" (5) plaintiffs have sustained no damage as a result of the anticipatory breach; (6) plaintiffs' failure to mitigate; (7) plaintiffs' claims are barred as a result of their own culpable conduct; and (8) plaintiffs cannot obtain equitable relief since they have an adequate remedy at law. In addition, defendant's Answer also contains several counterclaims which are at issue in this summary

judgment motion.[10] Plaintiffs assert that the defendant abandoned these eight affirmative defenses and four counterclaims because defendant did not respond to plaintiffs' arguments concerning these claims. See Pls. Reply Br. at 7-8.[11] Plaintiffs ask the Court to grant summary judgment on this basis.

While courts generally consider claims waived or abandoned when not fully briefed on a summary judgment motion, it is not required to do so. See Barlow v. Connecticut, 319 F.Supp.2d 250, 266-67 (D.Conn.2004) (Courts may deem abandoned any claims not fully briefed in a motion for summary judgment); see also Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 363 n. 9 (2d Cir.2004); Arbercheski v. Oracle Corp., 2005 WL 2290206, at *3 (S.D.N.Y.2005). Rather, it is in the discretion of the court. See Lipton v. County of Orange, 315 F.Supp.2d 434, 446 (S.D.N.Y.2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal citations omitted); see also Abbatiello v. Monsanto Co., 522

---

[10]The Third Counterclaim seeks an accounting concerning the alleged failure to provide monthly financial records. The Fourth Counterclaim asserts that plaintiffs have managed the day-to-day operations of the Company so as to have placed the Company in financial jeopardy. The Fifth Counterclaim alleges mismanagement relating to the day-to-day operations. The Sixth Counterclaim alleges that the lawsuit has caused damage to the reputation and good will of defendant.

[11]With respect to the Sixth Counterclaim, plaintiffs argue that defendant did not respond to plaintiffs' claim that this counterclaim must be dismissed as legally insufficient. See Pl. Br. at 24. In addition, plaintiffs contend that the Third, Fourth and Fifth Counterclaims assert matters arising solely under the Operating Agreement. See Pls. Reply Br. at 7-8. Moreover, plaintiffs claim that because defendants' Third, Fourth and Fifth Counterclaims may only be arbitrated, it cannot not be litigated before this Court. See id. The Court agrees that the Third, Fourth and Fifth Counterclaim pertain only to the Operating Agreement and thus are subject to binding arbitration.

F.Supp.2d 524, 530 (S.D.N.Y.2007); <u>In re Refco Capital Mkts., Ltd.</u>
<u>Brokerage Customer Sec. Litig.</u>, 2007 WL 2694469 at *6 (S.D.N.Y.2007).

In <u>Taylor v. City of New York</u>, the court stated that "[f]ederal
courts may deem a claim abandoned when a party moves for summary
judgment on one ground and the party opposing summary judgment fails
to address the argument in any way." <u>See</u> <u>Taylor</u>, 269 F.Supp.2d 68, 75
(E.D.N.Y.2003); <u>see</u> <u>also</u> <u>Ostroski v. Town of Southold</u>, 2006 WL
2053761, at *10 (E.D.N.Y.2006). In the present case, the plaintiffs
moved for summary judgment, but the defendant did not address the
plaintiffs' arguments concerning the eight affirmative defenses and
four counterclaims in its response to the motion for summary
judgment. As a result of the defendant's failure to respond to the
plaintiffs' arguments, the court finds that the defendant abandoned
these claims relating to the eight affirmative defenses and four
counterclaims and thus plaintiffs' motion for summary judgment with
respect to those claims is granted. <u>See</u> <u>Taylor</u>, 269 F.Supp.2d at 75
(court noted that summary judgment could be granted when the court
found a claim to be abandoned); <u>Ostroski</u>, 2006 WL 2053761 at *10.

### V.   **Fraudulent Inducement**

Defendant, in its First and Second Counterclaim, alleges that
plaintiffs made false statements to the defendant in an effort to
induce defendant to enter into a contractual relationship with
plaintiffs. Specifically, Bedminster contends that plaintiffs
"provided defendant with...2006 Budget Forecasts and Profit/Loss

Statements," which defendant learned to be "false and misleading information regarding the financial status of the [Company]" after the execution of the Purchase and Sale Agreement. <u>See</u> Answer with Affirmative Defenses and Counterclaims ("Answer"), ¶¶30, 36.[12] Defendant alleges that it "detrimentally relied upon the representations made by plaintiffs" and "would not have purchased the [Company] without reliance upon false and misleading information provided by plaintiffs." <u>See</u> Answer, ¶¶31-32, 37.

"In New York, the elements of a claim for fraudulent inducement are: (1) representation of a material fact; (2) falsity of that representation; (3) scienter; (4) reliance; and (5) damages." <u>See</u> <u>Barsam v. Pure Tech Int'l, Inc.</u>, 864 F.Supp. 1440, 1446 (S.D.N.Y.1994); <u>Tyson v. Cayton</u>, 784 F.Supp. 69, 72-73 (S.D.N.Y.1992) ("To establish a claim of fraudulent inducement under New York law, plaintiff must satisfy each of the following elements: that 1) a misrepresentation was made 2) of a material fact 3) that was false when made and 4) that the maker knew to be false when he made it and 5) that was made with a present intent to deceive and induce reliance and 6) upon which plaintiff justifiably relied 7) without notice of its falseness 8) to his injury"); <u>Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.</u>, 98 F.3d 13, 19 (2nd Cir. 1996); <u>Sado v. Ellis</u>, 882 F.Supp. 1401, 1405 (S.D.N.Y.1995) ("Under New York

---

[12]Defendant alleges in ¶36 that plaintiffs "provided defendant with...2006 Budget Forecasts and Profit/Loss Statements," which defendant learned "contained negligent and/or intentional misleading information regarding the financial status of the [Company]" after the execution of the Purchase and Sale Agreement.

law...Sado must prove the following elements of fraudulent inducement: misrepresentation of a material fact, falsity, scienter, reliance, and injury.")

Fraud allegations are subject to the particularity requirement of Rule 9(b), which states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." See Rule 9(b). Specifically, the plaintiff must "'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" See Suez Equity Invs., L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 95 (2d Cir.2001) (quoting Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989)); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993) (to pass muster under Rule 9(b), the complaint must allege when and where the statements were made, identify the individual responsible for the statements, and specify the content of the alleged fraudulent statements); DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987). This requirement is relaxed somewhat when the relevant facts are peculiarly within the opposing party's knowledge. See Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir.1990). However, in those circumstances, pleaders must allege that the necessary information lies within

defendants' control and must provide a statement of the facts upon which the allegations are based. See DiVittorio, 822 F.2d at 1247.

The plaintiffs claim that Bedminster's allegations with respect to the First and Second Counterclaims are insufficient to state a fraud claim. The Court agrees. If Bedminster knows of the misleading statements or acts made by WeCare Holdings and Gregory, it must allege each and every statement with particularity. In the absence of any such knowledge, Bedminster may not use the federal discovery procedures to merely flush out fraudulent statements or acts. See Goldman v. Belden, 98 F.R.D. 733, 737-38 (W.D.N.Y.1983). Here, while the Answer states the 2006 Budget Forecasts and Profit/Loss Statements contain the false and misleading information, it never specifically states what false and misleading information the documents allegedly contain. In addition, Bedminster does not explain how or why the representations are now claimed to be false or why they are fraudulent. Bedminster also does not allege facts that show the claimed representation to be false and defendant does not allege facts that would support an inference that plaintiffs intended to deceive defendant or was motivated and had the opportunity to commit fraud. Moreover, what is lacking from the counterclaim are allegations specifying how Bedminster's reliance on plaintiffs' representations were reasonable, or even that it did rely on them, without making its own independent inquiry.

Although the alleged facts must give rise to a strong inference of fraudulent intent, "'great specificity [is] not required with respect to...allegations of...scienter.'" See Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir.1994) (quoting omitted) The reason for this is that "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." See Connecticut Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir.1987). Nevertheless, the Second Circuit has cautioned courts not to "mistake the relaxation of Rule 9(b)'s specificity requirement regarding scienter for a 'license to base claims of fraud on speculation and conclusory allegations.'" See Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir.1995) (quotation omitted) Therefore, "plaintiffs have the 'burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter.'" See Cohen, 25 F.3d at 1173-74 (quoting Fluor, 808 F.2d at 962).

In this case, the allegations in the First and Second Counterclaim do not state that WeCare Holdings or Gregory made representations knowing they were false. Also, there are no factual allegations that support any inference of fraud. Further, there is minimal factual detail or explanation in defendant's counterclaims and accordingly does not satisfy the requirements of Rule 9(b). Presuming all factual allegations of the counterclaims to be true, and drawing all reasonable inferences in the defendant's favor, the court concludes that defendant is unable to prove any set of facts

which would entitle it to relief. Defendant's First and Second Counterclaims are dismissed.

Moreover, when fraudulent inducement is alleged in the context of a contract dispute, "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." See Wall v. CSX Transp., Inc., 471 F.3d 410, 416 (2d Cir. 2006) (internal quotations omitted). Rather, in contract cases, in order to maintain an action for fraudulent inducement, the plaintiff must allege the existence of a "misrepresentation that is collateral to the contract it induced." See id. In the instant case, the alleged misrepresentations all relate to matters that are the subjects of the contract at issue. Defendant's counterclaims allege that it "relied upon [negligent and/or intentional mis]representations made by plaintiff[s] in acquiring the [Company]." See Answer, ¶37; see also ¶31. As such defendant "was fraudulently induced to enter the Purchase and Sale Agreement," and that certain documents provided to them "contained negligent and/or intentional misleading information regarding the financial status of the [Company]." See id., ¶¶35-36; see also ¶¶29-30. These allegations are all matters related to the Purchase and Sale Agreement. Because the alleged misrepresentations are not collateral to the contract at issue, defendant has failed to state a cause of action for fraudulent inducement. Thus, on this alternative basis, defendant's First and Second Counterclaims are dismissed.

## VI.   <u>Specific Performance and the Doctrine of Unclean Hands</u>

Defendant argues that plaintiffs' action seeking specific performance is precluded by plaintiffs' unclean hands. <u>See</u> Def. Br. at 14. Defendant contends that plaintiffs operated the Company in a reckless business manner which constitutes unclean hands and accordingly should bar plaintiffs from the equitable remedy of specific performance. <u>See</u> <u>id.</u> Application of the doctrine of unclean hands "has required a finding of wrongful intent or wilful misconduct and mere negligent conduct has not sufficed." <u>See</u> <u>A.H. Emery Co. v. Marcan Prods. Corp.</u>, 389 F.2d 11, 18 n. 4 (2d Cir.1968). Moreover, "courts that have denied...relief due to plaintiff's unclean hands have found plaintiff guilty of truly unconscionable and brazen behavior." <u>See</u> <u>Gidatex, S.r.L. v. Campaniello Imports, Ltd.</u>, 82 F.Supp.2d 126, 131 (S.D.N.Y.1999).

In addition, application of the unclean-hands rule is appropriate "'where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.'" <u>See</u> <u>Estate of Lennon v. Screen Creations, Ltd.</u>, 939 F.Supp. 287, 293 (S.D.N.Y.1996) (quotation omitted); <u>see</u> <u>also</u> <u>Nat'l Distillers & Chem. Corp. v. Seyopp Corp.</u>, 17 N.Y.2d 12, 15-16 (1966) (observing that the unclean-hands rule "is never used unless the plaintiff is guilty of immoral, unconscionable conduct"). The concept of unconscionability is reserved for the type of agreement so one-sided that it "'shock[s]

-26-

the conscience'" such that "'no [person] in his [or her] senses and not under delusion would make [it] on the one hand, and ... no honest and fair [person] would accept [it] on the other.'" See <u>Christian v. Christian</u>, 42 N.Y.2d 63, 71 (1977).

Viewing the facts most favorably to defendant, plaintiffs operated the Company in a commercially unreasonable manner by creating a $100,000 deficit from debts they incurred through self-dealing with their own affiliate companies. See <u>Def. Br.</u> at 14.[13] However, defendant's allegations on this point amount to, at most "reckless business conduct" by plaintiffs (see <u>id.</u>) but not "monstrously harsh" or "shocking to the conscience" behavior. See <u>Flash Holding Corp. v. Morgenstern</u>, 89 N.Y.S.2d 43, 46 (Sup.Ct. Kings County 1949). Grondin's affidavit does not state facts that show any culpable mental state on plaintiffs' part and no facts have been established that plaintiffs attempted to harm the defendant. Accordingly, defendant's motion requesting the Court to strike plaintiffs equitable remedy of specific performance due to unclean hands is denied.[14]

---

[13]Defendant's claims of unclean hands stems from plaintiffs' conduct of "operating the Company in a reckless business manner." <u>See</u> Def. Br. at 14. However, the Court has already ruled that operating issues are not part of the Purchase and Sale Agreement and thus not before the Court but is part of the arbitration. <u>See</u> Point I.

[14]Further, "specific performance will not be granted where it would cause unreasonable hardship or injustice." <u>See</u> <u>Concert Radio v. GAF Corp.</u>, 108 A.D.2d 273, 278, affd 73 N.Y.2d 766 (1985). "[E]quity will not relieve parties from bargains simply because they are unreasonable or unprofitable." <u>See</u> <u>Khayyam v. Diplacidi</u>, 167 A.D.2d 300, 301 (1990). I am of the view that defendant's allegations in this case fall into the latter category. Here, the facts show that defendant was intimately involved in managing the business as seen from the exhibits to Gregory's reply affidavit and the exhibits attached to Frank P. Discenza's Affidavit ("Discenza Aff.").

### VII. **Forensic Audit**

Defendants contend that the parties agreed to conduct a forensic audit of the Company's finances ("November 2007 Agreement") as a way of resolving factual discrepancies between financial statements provided as part of the closing of the Purchase and Sale Agreement that showed a profit and the subsequent operation of the business by plaintiffs that led to losses. See Def. Br. at 16. Defendants argue that the audit would determine whether the plaintiffs' actions in managing the Company constituted a breach of the Purchase and Sale Agreement and the Operating Agreement. See id. Defendant accordingly requests that the Court enforce the November 2007 Agreement and stay plaintiffs' motion for summary judgment until completion of the audit. See id. The Court has already ruled that defendant's motion to stay plaintiff's action pending completion of the arbitration for plaintiffs' violations of the Operating Agreement is denied. See Point I. The Court also noted that the Operating Agreement provides for all performance obligations relating to the Company's operations.

Here, the November 2007 Agreement states that the audit would address financial records from May 10, 2006 to present. See Grondin Aff. Ex. E. Accordingly, the forensic audit addresses events on or after the closing date of May 10, 2006 and not prior to such date. Because the focus of the audit is on operations on or after the closing, logically, it falls under the Operating Agreement and may not be litigated before the Court, but rather before the arbitrator

pursuant to the contractual provision of the Operating Agreement. Thus, defendant's motion for a stay to conduct an audit is denied.

**VIII.   <u>Leave to Amend</u>**

Defendant seeks leave to amend its Answer to add an affirmative defense and counterclaim for indemnification pursuant to the Purchase and Sale Agreement. <u>See</u> Def. Br. at 18. Defendant cites to Section 5.1 of the Purchase and Sale Agreement and contends that plaintiffs were specifically obligated to indemnify defendant for any and all losses that occurred post-closing due to the operation of the Company. <u>See</u> <u>id.</u> at 19. Plaintiffs counter by arguing that leave to replead should be denied where the proposed affirmative defense and counterclaims are futile. <u>See</u> Pls. Reply Br. at 13. Plaintiffs assert that the indemnification provisions of the Purchase and Sale Agreement apply to both parties to the extent that each has a 50% interest and this is mirrored in the agreement. <u>See</u> <u>id.</u>

Although Rule 15(a)(2) states that "the court should freely give leave [to amend a pleading] when justice so requires," denial of leave to amend is within the court's discretion. <u>See</u> <u>John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.</u>, 22 F.3d 458, 462 (2d Cir.1994). Reasons for such denial include futility, bad faith, undue delay, or undue prejudice to the opposing party. <u>See</u> <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 200 (2d Cir.2007) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Relatedly, Rule 13(f) allows a party to assert a counterclaim by amendment where the pleader had failed to

do so originally because of "oversight, inadvertence, or excusable neglect, or when justice requires." <u>See</u> Fed.R.Civ.P. 13(f). When a party seeks leave to amend its answer to assert a counterclaim, as the Court has been asked to do here, Rules 13(f) and 15(a) must be read together. <u>See</u> <u>Bank of New York v. Sasson</u>, 786 F.Supp. 349, 352 (S.D.N.Y.1992).

The standard for futility is based upon that of a motion to dismiss under Rule 12(b)(6). <u>See</u> <u>Bank of New York</u>, 786 F.Supp. at 352 ("If the claims would be subject to dismissal under...12(b)(6), the court should refuse to grant leave to amend rather than assent and then await a motion to dismiss"); <u>see</u> <u>also</u> <u>Health-Chem Corp. v. Baker</u>, 915 F.2d 805, 810 (2d Cir.1990) ("Although [Rule] 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied"). In order to satisfy this standard, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" <u>See</u> <u>ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir.2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)).

In this case, §5.1 of the Purchase and Sale Agreement obligates plaintiffs to indemnify defendant for any and all losses that occurred post-closing due to the operation of the Company. However, §5.2 mirrors §5.1 but it obligates the defendant to indemnify

plaintiffs for any and all losses that occurred post-closing due to the operation of the Company. Accordingly, based upon the language of §§5.1 and 5.2 of the Purchase and Sale Agreement, plaintiffs and defendant agreed to assume their own liability for losses incurred after the closing. Given these factual allegations, the Court finds that a counterclaim for indemnification would be futile. Defendant is unable to provide factual allegations sufficient "'to raise a right to relief above the speculative level.'" See ATSI, 493 F.3d at 98. There are no set of facts alleged that could show that plaintiffs would be responsible for any losses greater than the extent of their 50% ownership interest based on §§5.1 and 5.2 of the Purchase and Sale Agreement. Therefore, defendant's motion for leave to amend its Answer is denied.

## CONCLUSION

For the reasons set forth above, I deny the defendant's motion for a stay and grant plaintiffs' motion for summary judgment. Accordingly, the court finds the following: (a) Bedminster's motion to stay plaintiff's action including, the motion for summary judgment pending completion of the arbitration for plaintiffs' violations of the Operating Agreement, is denied; (b) Plaintiffs' motion for summary judgment relating to defendant's anticipatory breach is granted; (c) the defendant abandoned its eight affirmative defenses and four counterclaims (Third, Fourth, Fifth and Sixth Counterclaim) and thus plaintiffs' motion for summary judgment with respect to

those claims is granted; (d) plaintiffs' motion relating to defendant's First and Second Counterclaims is granted and thus, defendant's First and Second Counterclaims are dismissed; (e) defendant's motion requesting the Court to strike plaintiffs equitable remedy of specific performance due to unclean hands is denied; (f) defendant's motion for a stay to conduct an audit is denied; (g) defendant's motion for leave to amend its Answer to add an affirmative defense and counterclaim is denied.

The Court has now determined liability but it is still necessary to determine the appropriate relief in this case. Accordingly, it is further ordered that the plaintiffs file a motion with respect to the relief it seeks, whether specific performance or damages, by no later than April 15, 2009. Defendant shall file its response by no later than May 15, 2009. Plaintiffs shall file their reply, if any, no later than June 1, 2009.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           March 9, 2009